Hon. Scott W. Dales
United States Bankruptcy Judge

# EXHIBIT INDEX

**Exhibit A** — Order of Discharge (December 8, 2025)

**Exhibit B** — USPS Proof of Delivery of Certified Demand Letter (Delivered December 26, 2025)

**Exhibit C-1** — UCC-1 Financing Statement Filed by Fundo LLC (June 29, 2021)

**Exhibit C-2** — Michigan Department of State UCC Portal Screenshot Showing "Active | UCC Lien" (Certified February 2, 2026)

**Exhibit D** — Email Correspondence Showing Notice of Bankruptcy, Discharge, and Refusal to Release Lien (September 22 & December 9, 2025)

# EXHIBIT A

## Order of Discharge (December 8, 2025)

Official Form 318 (12/15)

**United States Bankruptcy Court**
**Western District of Michigan**
One Division Ave., N.
Room 200
Grand Rapids, MI 49503

| | |
|---|---|
| **IN RE:** Debtor (name used by the debtor in the last 8 years, including married, maiden, trade, and address):<br><br>**Kristy Michelle Wright**<br>1733 Oak Street<br>Apt B<br>Niles, MI 49120<br>SSN: xxx–xx–8805<br><br>**Debtor** | **Case Number 25–01982–swd**<br><br>**Chapter 7**<br><br>**Honorable Scott W. Dales** |

## Order of Discharge

**IT IS ORDERED:** A discharge under 11 U.S.C. § 727 is granted to:

Kristy Michelle Wright

**By the court:**

**DATE:** December 8, 2025

Scott W. Dales
United States Bankruptcy Judge

---

**Explanation of Bankruptcy Discharge in a Chapter 7 Case**

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**For more information, see page 2 >**

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**Some debts are not discharged**

Examples of debts that are not discharged are:

- debts that are domestic support obligations;
- debts for most student loans;
- debts for most taxes;
- debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;
- debts for most fines, penalties, forfeitures, or criminal restitution obligations;
- some debts which the debtors did not properly list;
- debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and
- debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

**This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

# EXHIBIT B

## USPS Proof of Delivery of Certified Demand Letter (Delivered December 26, 2025)

ALERT: SEVERE WEATHER CONDITIONS ACROSS THE U.S. MAY DELAY PROCESSING, TRANS...

# USPS Tracking®

FAQs >

Tracking Number:

Remove ×

## 9589071052700895219843

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 10:51 am on December 26, 2025 in ENGLEWOOD CLIFFS, NJ 07632.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered

**Delivered, Left with Individual**

ENGLEWOOD CLIFFS, NJ 07632
December 26, 2025, 10:51 am

**See All Tracking History**

Feedback

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

### Text & Email Updates

### USPS Tracking Plus®

### Product Information

See Less

Track Another Package

# EXHIBIT C-1

## UCC-1 Financing Statement Filed by Fundo LLC (June 29, 2021)

[redacted]

Michigan Department of State - Uniform Commercial Code

Filing Number: 20210629000843-3

Filing Date and Time: 06/29/2021 05:00 PM

Total Number of Pages: 13

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC 1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

2134 92415
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Michigan (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| Wright | Kristy | Michelle | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY | |
| 1733 Oak Street Apt B | Niles | MI | 49120 | USA | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Fundo, LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3323 163rd Street, Suit 509 | North Miami Beach | FL | 33160 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credits Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
2134 92415

Fundo

# PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement, along with Terms and Conditions (the "Terms and Conditions"), and Payment Authorization Agreement (the "Authorization Agreement") incorporated and referenced herein and collectively and together referred to hereinafter as the "Agreement" dated 6/24/2021, ("Executed Date") is made by and between Fundo, LLC (hereinafter, together collectively referred to as the "Fundo" or the "Buyer"), Kristy Wright and the business identified below (hereinafter, together collectively referred to as the "Seller" or the "Merchant"). Fundo and Seller may each individually be referred to hereinafter as a "Party" and may collectively be referred to as the "Parties".

| | | |
|---|---|---|
| Seller/Merchant Name: Kristy Wright | | |
| Business: Self | | |
| Address: [redacted] | | |
| City: [redacted] | State: [redacted] | Zip: [redacted] |

## OFFER TO SELL AND PURCHASE PAYMENT RIGHTS

Seller, hereby sells, assigns and transfers to Fundo, without recourse, upon Buyer's payment of the Purchase Price ("Buyer's Payment"), the Purchased Amount of Future Receipts by delivering to Fundo the Specified Percentage of the proceeds of each future sale by Seller. "Future Receipts" or "Future Receipts Sold" shall mean, including, but not limited to, all payments made including, but not limited to: the Purchased Amount of cash, check, ACH or other electronic transfer ("RCC"), credit card, debit card, bank card, charge card or any other form of monetary payment (each a "transaction" and collectively, together, referred herein as the "Payment Transaction") in the ordinary course of Seller's business. BASED UPON THE BUYER'S CALCULATIONS AND THE SELLER'S EXPERIENCE IN OPERATING ITS BUSINESS, SELLER IS CONFIDENT THAT THE PURCHASE PRICE PAID BY FUNDO IN EXCHANGE FOR THE PURCHASED AMOUNT OF FUTURE RECEIPTS WILL BE USED IN A MANNER THAT WILL BENEFIT SELLER'S CURRENT AND FUTURE BUSINESS OPERATIONS.

Sale of Future Receipts (THIS IS NOT A LOAN). Fundo's Small Business Finance Product (the "Program") has associated costs which are listed below and is provided to help you understand and evaluate the Program's cost. Seller is selling a portion of their Future Receipts to the Buyer at a discount, not borrowing money from the Buyer. There is no interest rate or set payment schedule and no time period during which the Purchased Amount must be collected by Buyer. Seller agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Seller agrees that Buyer is entitled to audit Seller's accounting records upon reasonable Notice in order to verify compliance. Seller waives any rights of privacy, confidentiality, or taxpayer privilege in any such litigation or arbitration in which Seller asserts that this transaction is anything other than a sale of future receipts.

### Small Business Finance Product Associated Costs

| | | | | |
|---|---|---|---|---|
| Purchased Price Amount $600.00 | Disbursed Amount (Minus Fees Withheld) $475.00 | Future Receipts Sold $2,100.00 | Specified Percentage 25% | Estimated Weekly Payment (* Including Monitoring Fee) $75.00* |
| Total Cost of Capital $1,775.00 | Processing Fee: $100.00<br>Other Fees: $150.00<br>Wire Fee: $25.00 | This is the total amount you will pay, including any upfront costs for capital. The amount does not include fees or other charges you can avo d, such as fees due to NSF (refer to Section VIII of the Terms and Conditions of the Purchase and Sale Agreement). It also assumes your business will generate all of the receivables Purchased by Buyer. | | |

***** PLEASE NOTE: IF SELLER CAN PAY THE FUTURE RECEIPTS SOLD SOONER THEN FUNDO WILL OFFER A DISCOUNT ON THE FUTURE RECEIPTS SOLD *****

**Seller's Warranties.** The Seller hereby represents and warrants to the Buyer that during the term of this agreement Seller shall (1) deposit all Future Receipts into the bank account, which must be acceptable to and pre-approved by Fundo (the "Account") and (2) instruct Seller's Credit Card processor (the "Processor") who shall serve as Seller's sole Credit Card processor to deposit all Credit Card receipts (the "Receipts") of the Seller into the Account. Seller further authorizes Fundo to initiate electronic checks ("RCC"), debit card ("Debit Card") or ACH ("ACH") debits from any of the Seller's Account whether known or unknown at the time this Agreement is executed, equal or up to the Payment owed until the balance due equals zero as referenced in Section I. (Terms of Purchase) of this Agreement. Seller understands that it is responsible for ensuring that the Payment is available in the Account and will be responsible for any fees incurred by Fundo resulting from a rejected electronic check, debit card or ACH debit amount referred to in Section VIII (Fee Schedule). Fundo is not responsible for any overdrafts or rejected transactions that may result from Fundo's debiting any amount authorized under the terms of this Agreement.

Seller's first payment shall be drafted on 7/2/2021 and shall continue Weekly thereafter until all the Future Receipts Sold have been collected.

**Fundo Acknowledgement.** There is no interest rate or payment schedule and no period of time during which the Purchased Amount must be collected by Fundo. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Fundo is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Fundo assumes these risks based on Seller's representations, warrants, and covenants in this Agreement, which are designed to give Fundo a reasonable and fair opportunity to receive the benefit of its bargain.

**Seller's Right to Request a Reconciliation.** The Payment amount is intended to represent the Specified Percentage of Future Receipts Sold. Seller may request that Fundo reconcile Seller's actual receipts by either crediting or debiting the difference back to or from the Account so that the amount Fundo debited in the most recent calendar month equaled the Specified Percentage of Future Receipts that Seller collected in that calendar month. Any reconciliation request must be: (i.) in writing; (ii.) include a copy of Seller's bank statement for the calendar month in question; and (iii.) be sent to Fundo at 3323 NE 163rd Street Suite 509, North Miami Beach, FL 33160 or via email at support@fundo.com within 30 (thirty) days after the last day of the calendar month in question. It is the Seller's sole responsibility to send all pages of their bank statement business deposits are deposited into. Notwithstanding anything to the contrary in this Agreement or any other agreement between Fundo and Seller, whether verbal or written, upon the occurrence of an Event of Default described in Section 3.1 of this agreement, the Specified Percentage of Receipts Purchased shall be equal to 100% of the banking deposit receipts. A list of all fees applicable under this Agreement are contained in the Terms & Conditions attached hereto.

**Acceptance.** ("Acceptance"). In consideration of Fundo's payment for the Purchase Price of Future Receipts sold, notwithstanding the execution of this Agreement by Fundo, this Agreement shall be deemed valid if:

I. Seller executed this agreement; and
II. Fundo Deposits the Disbursed Amount ("Payment of Purchase Price") into an account designated by the Seller (the "Account");

**Seller's Representations.** The Seller hereby represents and warrants to the Buyer that the Seller is (i) authorized to sign this Agreement; (ii) the statements contained in this Agreement are correct and complete as of the date of this Agreement; and (iii) believes the statements contained herein and the information provided herein in addition to any and all documents, forms, electronic communication (including, but not limited to emails, facsimile, text messages, etc.), and recorded interviews provided to or with Fundo is true, accurate, and complete in all respects. An investigative report or credit report may be made in connection with this Agreement. Seller authorizes Fundo, its agents and representatives, and any credit reporting agency engaged by Fundo to (i) investigate any references given, any other statements or data obtained from or about Seller, for the purpose of this Agreement; (ii) obtain credit reports, including consumer credit reports during the term of this Agreement and until all of Seller's obligations under this Agreement have been satisfied; and (iii) to determine the Seller's eligibility into the Program, to enter into any future Agreement with Fundo, and/or collect on this Agreement.

ANY MISREPRESENTATION MADE BY SELLER OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD, INTENTIONAL MISREPRESENTATION AND/OR UNJUST ENRICHMENT IN WHICH EVENT FUNDO WILL BE ENTITLED TO THE RECOVERY OF NOT ONLY ITS LOSSES BUT ALSO ALL OF ITS COSTS AND EXPENSES AND ITS REASONABLE LEGAL FEES.

| | |
|---|---|
| Seller/Merchant: | Kristy Wright |
| Signature: | Kristy Wright |
| Date: | 6/24/2021 |
| IP Address: | [redacted] |

# Fundo

## TERMS AND CONDITIONS

These Terms and Conditions are part of the Purchase and Sale Agreement, dated as of 6/24/2021.

## I. TERMS OF PURCHASE

**(a) Payment Authorization.** As part of this Agreement, Seller shall execute the Payment Authorization Agreement, incorporated herein, allowing Fundo to authorize the use of the Automated Clearinghouse System (ACH) to retrieve Payments from the Seller's Account per the terms in this Agreement. Seller shall provide Fundo and/or its authorized representatives and agent(s) with all of the Account information for the Seller's Financial Institution, authorizations and passwords necessary for verifying Seller's receivables, receipts, deposits and withdrawals into and from the Account. Seller hereby authorizes Fundo, its agent(s), its representative's and/or its assigns to (i) deduct from the Account the Specified Percentage for the Purchased Amount/Future Receipts Sold; (ii) any other amounts owed by Seller to Fundo as specified herein; and (iii) to pay such amounts to Fundo.

**(b) Payment Transactions.** If Fundo processes the Seller Payment via an ACH, RCC or Debit Card transaction and the transaction is rejected by Seller's financial institution for any reason other than a stop payment placed by the Seller with its financial institution, including and without limitation to insufficient funds (NSF), Seller agrees that (i) Fundo may resubmit any ACH transaction that is dishonored as permitted under NACHA (National Automated Clearinghouse Association) Rules ("NACHA Rules"); and (ii) Fundo may resubmit any RCC and Debit Card payment as necessary. In the event Fundo makes an error in processing any payment(s) or credit(s), Seller further authorizes Fundo to initiate an ACH transaction(s) to or from the Seller's Account to correct the error. These authorizations apply not only to the approved Account, but also to any subsequent or alternate account used by the Seller for these deposits, whether preapproved by Fundo or not. This additional authorization is not a waiver of Fundo's right to declare Seller in default if Seller uses an account that Fundo did not first pre-approve in writing.

**(c) Convenience Fees.** If Buyer processes the payment owed with a Debit Card, a convenience fee equal to the greater of 3% of the payment amount charged or five dollars ($5.00), whichever is greater, shall be added to the amount owed to Fundo and the payment processed. If Buyer processes the payment owed by remote check creation (RCC), then a five-dollar ($5.00) convenience fee shall be added to the payment processed and amount owed to Fundo. This authorization shall be irrevocable without the prior written consent of Fundo.

**(d) Bank Holidays and Other Exceptions.** Fundo will debit the Seller's Payment on a day the Bank is open and able to process transactions. On the Weekday immediately following any Weekday(s) on which the Bank was not open to process transactions, Fundo will debit the designated account for an amount equal to the sum of: (i) the Payment that was scheduled on that day, plus (ii) the Payment amount scheduled on the preceding Weekday(s) when the Bank was not open or was unable to process transactions.

**1.1 Financial Condition.** Seller authorizes Fundo and its agents or assigns to investigate their financial responsibility and history and will provide to Fundo any necessary and required authorizations, bank or financial statements, tax returns, etc., as Fundo, in its sole discretion, deems necessary prior to or at any time after the execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Fundo is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.2 Transactional History.** Seller authorizes all of its banks and brokers and Credit Card processors to provide Fundo with the Seller's banking, brokerage, and/or processing history.

**1.3 Indemnification.** Seller jointly and severally agrees to indemnify and hold harmless Fundo, its officers, agents, representatives, directors and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney's fees) incurred by Fundo resulting from Seller's actions or inactions as it pertains to this Agreement.

1.4 **No Liability.** In no event will Fundo be liable for any claims asserted by Seller under any legal theory for the loss of profits, revenues, business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, and each of which is waived by Seller. In the event of a claim being brought to enforce rights under this contract, the prevailing party shall be entitled to recover its costs and expenses, including but not limited to reasonable attorneys' fees, incurred in the event of breach of this contract. Seller hereby waives the right, to the maximum extent permitted by law, any claim for damages against Fundo or any of its affiliates and/or assigns relating to any (i) investigation undertaken by or on behalf of Fundo as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.5 **Accounting Records, and Place of Business.** Fundo and/or its designated representatives, agents and assigns shall have the right during Seller's normal business hours and at any other reasonable time to examine the interior and exterior of the Seller's place of business. Fundo may examine, among other things, whether Seller is (i.) open for business; and (ii) has sufficient inventory to conduct business. When performing an examination, Fundo may photograph the interior and exterior of any of Seller's places of business, including any signage, and may photograph any Owner or employee of the business. Fundo or any of its agents shall have the right to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Seller's accounts or other transactions between the parties thereto and the general financial condition of Seller and Fundo may remove any of such records temporarily for the purpose of having copies made thereof. Fundo shall have the right to hire a Certified Public Accountant, licensed in the state where the business is located to perform analysis of the accounting records for the purpose of determining if the Specified Percentage of receipts has been made available for remittance to Fundo. Seller hereby agrees to fully cooperate with such analysis upon the request of the Buyer.

1.6 **Power of Attorney.** Seller irrevocably appoints Fundo as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all Seller's obligations due and owed to Buyer from any of Seller's financial institution(s), Processor(s), or in the case of an occurrence of an Event of Default under Section 3 hereof to Fundo under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Purchased Amount; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iii) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to Fundo; (iv) to file any claims or take any action or institute any proceeding that Fundo may deem necessary for the collection of any of the unpaid Purchased Amount, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by Seller and authorizes Fundo to use Seller's funds to pay for the same, and (v) Fundo shall have the right, without waiving any of its rights and remedies and without notice to Seller, to notify any Credit Card processor and technology platform of the sale of Future Receipts and re-direct the remittance of daily settlements to an account of Fundo's choosing in order to settle all obligations due to Fundo under this Agreement.

1.7 **Confidentiality.** Seller understands and agrees that the terms and conditions of the products and services offered by Fundo, including this Agreement and any other Fundo documentations (collectively, "Confidential Information") are proprietary and confidential information of Fundo. Accordingly, unless disclosure is required by law or court order, Seller shall not disclose Confidential Information of Fundo to any person other than an attorney, accountant, financial advisor, or employee of Seller's (collectively, "Advisor") on a need to know basis for the purpose of advising Seller, provided such Advisor uses Confidential Information solely for the purpose of advising Seller and first agreeing in writing to be bound by the terms of this Section 1.7. A breach hereof entitles Fundo to not only damages and legal fees, but also to both a temporary restraining order and a preliminary injunction without bond or security.

1.8 **D/B/A's.** Seller hereby acknowledges and agrees that Fundo may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between Fundo and Seller, including, but not limited to the filing of UCC-1 Financial Statement and any other notices, filings or legal proceedings.

1.9 **Application of Amounts Received.** Subject to applicable law, Fundo reserves the right to apply any amounts received from Seller to any fees or other charges due to Buyer from Seller prior to applying such amounts to reduce the amount of any outstanding Purchased Amount.

1.10 **Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Fundo pursuant to this Agreement are "accounts", "general intangibles", or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Fundo. To the extent the Future Receipts are "accounts" or "payment intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC, (ii) this Agreement constitutes a "security agreement" under the UCC, and (iii) Fundo has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without an Event of Default, Fundo may notify account debtors, or other persons obligated on the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Fundo.

1.11 **Financing Statements.** Seller hereby authorizes Fundo to file one or more financing statements in order to give notice that the Purchased Amount of Future Receipts is the sole property of Fundo. Each such filing may state that such sale is intended to be a

sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Receipts or Fundo's right to collect same. Seller authorizes Fundo to apply amounts received from Seller to costs incurred by Fundo associated with the filing, amendment, or termination of any such filings.

## II. SELLER'S REPRESENTATIONS, WARRANTIES AND COVENANTS:

**2.1 Good Faith, Best Efforts and Due Diligence.** Seller will conduct its business in good faith and will use its best efforts to maintain and grow its business, to ensure that Fundo obtains the Purchased Amount. Furthermore, Seller agrees, warrants and represents hereby that Seller will constantly perform all appropriate Due Diligence and credit checks of all of the customers' finances, cash flow, solvency, good faith, payment histories and business reputations (the "Due Diligence Requirements") as may be commercially reasonable to ensure any and all products and/or services provided, sold or delivered by Seller to said customers will be paid for by customers in full and on time, and will not result in the creation of an unpaid account. This is not a guaranty of payment by Seller's customers but is an obligation of commercially reasonable Due Diligence investigation and credit check of customers before extending credit to them and continuing no less frequently than monthly so long as sums are still due.

**2.2 Nonrecourse Sale of Payment Rights.** Seller represents and warrants that it is selling the Purchased Amount of Future Receipts to Buyer and the Purchase Price paid by Fundo is constitutes the good and valuable consideration of the sale. Seller is selling a portion of a future revenue stream to Fundo at a discount, not borrowing money from Fundo. If Future Receipts are remitted more slowly than Fundo or Seller may have anticipated or projected due to the Seller's business slowing down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Fundo and would not be in breach of or default under this Agreement. By this Agreement, Seller transfers to Fundo full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. However, should Seller attempt to defraud Fundo by opening a similar business to avoid paying the sold future receipts, the Seller and undersigned shall remain responsible for the Amount of Future Receipts due and owed to Fundo.

**2.3 Financial Condition and Financial Information.** Seller's bank and financial statements, copies of which have been furnished to Fundo, and future statements that will be furnished hereafter at the request of Fundo, fairly represent the financial condition of Seller at such time, and as of the dates listed on the statements. Seller represents and warrants that there has not been any material adverse changes, financial or otherwise, in the condition, operation or ownership of Seller's business. Furthermore, Seller has a continuing, alternative obligation to advise Fundo of any material adverse change in their financial condition, business, operation, or ownership of said business. Fundo may request statements at any time during the performance of this Agreement and the Seller shall provide said statements to Fundo within five (5) business days from the date requested by Fundo. Seller's failure to do so is a material breach of this Agreement.

**2.4 Governmental Approvals.** Seller represents and warrants they are in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate and lease properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.5 Authorization of Agreement.** The Seller signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement. Seller also represents and warrants to the Buyer that the execution and delivery of the Agreement and the performance of such party's obligations hereunder have been duly authorized and that the Agreement is a valid and legal agreement binding on such party and enforceable in accordance with its terms.

**2.6 Insurance.** Seller will maintain any necessary insurance required for their business and shall provide Fundo proof of such insurance upon request.

**2.7 Processor and Bank Account.** Seller will not change its Credit Card processor, add terminals, change its financial institution, or bank account(s), or take any similar action that could have an adverse effect upon Seller's obligations under this Agreement, without Fundo's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.8 Change of Name, Type, Location or Sale of Business.** Seller will not without prior written consent by Fundo (i) conduct Seller's businesses under any name other than as disclosed to Fundo; (ii) change any of its places of business (iii) dissolve current business and /or reopen under a different business name; (iv) change the type of business (v) sell, dispose, transfer, or otherwise convey its business or assets without (a) the express prior written consent of Fundo, and (b) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Fundo.

**2.9 Daily Batch Out.** Seller will ensure that all Payment transactions are communicated daily to the Processor and not later than the day on which such transactions occurred.

**2.10 Estoppel Certificate.** Seller will at all times, and from time to time, upon at least one (1) day prior notice from Fundo to Seller, execute, acknowledge and deliver to Fundo and/or to any other person, firm or corporation specified by Fundo, a statement

certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been delivered to Fundo or the amount of the Purchased Amount that has not been delivered to Fundo.

**2.11 No Bankruptcy.** As of the date of this Agreement, Seller is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under the United States Bankruptcy Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within the prior six (6) months as of the date of this Agreement, and that it has no present intention of closing its business or ceasing to operate its business, either permanently or temporarily, during a 6-month (six-month) period after the date of this Agreement. Seller further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.12 Sharing of Information.** Seller hereby authorizes Fundo to share information regarding Seller under this Agreement with affiliated third parties to verify Seller is in compliance with this Agreement.

**2.13 Unencumbered Receipts.** Seller has good, complete, unencumbered, and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Fundo.

**2.14 Business Purpose.** Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates. Seller agrees to use the Purchase Price solely for business purposes, and not for personal, family or household purposes. Seller understands that Seller's agreement not to use the Purchase Price for personal, family or household purposes means certain important rights conferred upon consumers pursuant to federal or state law will not apply to this Agreement. Seller agrees that a breach by Seller of the provisions of this section will not affect Fundo's rights to the Purchased Amount/ Future Receipts Sold or to use any remedy legally available to Fundo to obtain delivery of the Purchased Amount/ Future Receipts Sold.

**2.15 Defaults under Other Contracts.** Seller's execution of, and/or performance under this Agreement, will not cause or create an Event of Default by Seller under any separate contract with another person or entity.

**2.16 Account.** Seller represents and warrants that (i) the Account is Seller's bank account, (ii) the person executing this Authorization on behalf of Seller is an authorized signer on the Account and has the power and authority to authorize Fundo to initiate Payment transactions to and from the Account, (iii) the Account is a legitimate, open, and an active bank account.

**2.17 Stacking Prohibited.** During the term of this Agreement, Seller shall not enter into any merchant cash advance, contract for purchase/sale of receivables, or any loan agreement that relates to or involves any of its Future Receipts with any party other than Buyer. Merchant further represents and warrants that (a) there are currently no outstanding, pre-existing merchant cash advance or loan agreements that relate to or involve the Future Receipts, or (b) there are currently outstanding, pre-existing merchant cash advance or loan agreements that relate to or involve the Future Receipts, but Merchant has previously disclosed the existence of any such pre-existing agreements to Buyer in writing.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default": (a) Seller intentionally interferes with Fundo's right to collect the Payment in violation of this Agreement; (b) Seller violates any terms or covenants in this Agreement; (c) Any representation or warranty by Seller in this Agreement proves to have been incorrect, false or misleading in any material respect when made; (d) the sending of notice of termination by Seller; (e) Seller transports, moves, interrupts, suspends, dissolves, or terminates its business without written consent of Fundo; (f) changes the business name and reopens under a different name (g) Seller transfers or sells all or substantially all of its assets without written consent of Fundo; (h) Seller makes or sends notice of any intended bulk sale or transfer by Seller; (i) Seller uses multiple depository accounts without the prior written consent of Fundo (j) Seller changes its depositing account or the Processor without the prior written consent of Fundo; or (k) Seller defaults under any of the terms, covenants, and conditions of any other agreement with Fundo; (l) Seller has 2 consecutive nonpayment(s) due to insufficient funds; and/or (m) Seller has any payment returned by the bank with the following ACH return codes: R02, R05, R07, R08, R10, R29, & R51.

**3.2 Remedies.** All rights, powers, and remedies of Fundo in connection with this Agreement may be exercised at any time by Fundo after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity. If any Event of Default occurs, Fundo may proceed to protect and enforce its rights including, but not limited to, the following:

a) The Specified Percentage shall equal 100% of Future Receipts. The full uncollected Purchased Amount/Future Receipts Sold, plus all fees (including legal fees) due under this Agreement will become due and payable in full immediately.

b) Fundo may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, under which Fundo shall recover judgment against Seller, Seller shall be liable for all of Fundo's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

c) Fundo may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check ("RCC") drawn on Seller's bank account, debit card charge or otherwise for all sums due to Fundo.

d) Seller shall pay to Fundo all reasonable costs associated with the Event of Default and the enforcement of Fundo's remedies set forth above, including but not limited to court costs and attorneys' fees.

3.2 Required Notifications. Seller is required to give Fundo written notice within Twenty-Four (24) hours of any filing under Title 11 of the United States Bankruptcy Code. Seller is required to give Fundo Seven (7) days written notice prior to the closing of any sale of all or substantially all of the Seller's assets or business.

## IV. MISCELLANEOUS

4.1 Modifications; Agreements. No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by each Party.

4.2 Assignment. Fundo may assign, transfer, or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

4.3 Notices (General). All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to Fundo shall become effective only upon receipt by Fundo. Notices to Seller shall become effective three (3) days after mailing.

a) Notice: (i) must be in legible writing and in English; (ii) must be addressed to the party to whom it is to be given ("Addressee") at the address and/or facsimile number and/or email address provided to Addressee or to any other address, facsimile number, or email address as notified by the Addressee for the purposes of this clause;

b) Must be signed by or on behalf of the sender, a designated officer of the sender, and/or a representative of the sender;

c) Must be either delivered by hand, sent by pre-paid mail to the address, sent by email to the Addressee's email address provided at the time of application.

4.3.1 Method of Notice. The parties will give all notices and communications between the parties in writing by (i) personal delivery, (ii) a nationally recognized, next-day courier service, (iii) first-class registered or certified mail, postage prepaid to the address that a party has notified to be that party's address for the purposes of this section, (iv) sent by prepaid mail to the Addressee using the USPS (United States Postal Service) ; (v) sent by electronic transmission (facsimile or email) to the Addressee's facsimile number or to the Addressee's email address provided at the time of application.

4.3.2 Receipt of Notice. A notice given under this agreement will be effective on the other party's receipt of it, or if mailed, the earlier of the other party's receipt of it and the fifth (5) business day after mailing it.

a) If (i) a party changes its address and fails to notify the other parties of this change and the new address, delivery of Notices marked to the attention of the Addressee at that new address is deemed compliant with the notice obligations under this clause; [and/or] if (ii) an individual named in Section 1(a)(ii) ceases to work in the role specified or ceases to work for the Addressee and the Addressee fails to notify the other parties of an alternative individual, delivery of Notices marked to the attention of an individual in the same or equivalent role at the Addressee is deemed compliant with the notice obligations under this clause and/or if (iii) an individual associated with an email address listed in Section 4.3 (a)(ii) ceases to work in the role specified or ceases to work for the Addressee and the Addressee fails to notify the other parties of an alternative email address, Notices sent by email to a manager or to an equivalent-level personnel at the Addressee are deemed compliant with the notice obligations under this clause.

b) Notices sent by email need not be marked for attention in the way stated in Section 4.3 (General). However, the email: (a) must state the first and last name of the sender and Notices sent by email are taken to be signed by the named sender.

c) Without limiting any other means by which the sender may be able to prove that a Notice has been received by the Addressee, a Notice is deemed to be received: (i) if delivered by hand, when delivered to the Addressee; (ii) if sent by post, on the 3rd (third) Business Day after the date of posting, or if to or from a place outside the United States, on the 10th (tenth) Business Day after the date of posting; [or] (iii) if sent by facsimile transmission, on receipt by the sender of an acknowledgement or transmission report generated by the machine from which the facsimile was sent; [or] if sent by email: (a) when the sender receives an automated message confirming delivery; or (b) 30 (thirty) minutes after the time sent (as recorded on the device from which the sender sent the email) unless the sender receives an automated message that the email has not been delivered, whichever happens first, but if the delivery or receipt is on a day which is not a Business Day or is after 5.00 pm (Addressee's time) it is deemed to be received at 9.00 am on the following Business Day.

4.4 **No Waiver of Remedies.** No failure on the part of Fundo to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 **Binding Effect, Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Seller, Fundo, and their respective successors and/or assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Fundo which may not be unreasonably withheld. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regards to any applicable principals of conflicts of law. Any suit, action, legal enforcement or proceeding arising hereunder, or the interpretation, performance, or breach of this Agreement shall, if Fundo so elects, be instituted in any court setting in New York or New Jersey, (the "Acceptable Forums"). Seller agrees that the Acceptable Forums are convenient to it and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Fundo to transfer such proceeding to an Acceptable Forum. ADDITIONALLY, SELLER AGREES THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY FUNDO WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE MAILING ADDRESS(ES) LISTED ON THIS AGREEMENT.

4.6 **Survival.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated. The nondisclosure provisions in Section 1.7 of this Agreement shall survive the termination of this Agreement and Receiving Party's duty to hold Confidential Information in confidence shall remain in effect for four (4) years after the termination of this agreement and until the Confidential Information no longer qualifies as a trade secret or until Disclosing Party sends Receiving Party written notice releasing Receiving Party from this Agreement, whichever occurs first.

4.7 **Interpretation.** All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice. No provision of this Agreement or any related document will be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have structured or drafted such provision.

4.8 **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement embodies the entire agreement between Seller and Fundo pertaining to the subject matter thereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

4.10 **Electronic Signatures.** Signatures transmitted electronically via email and facsimile shall be deemed acceptable for all purposes.

4.11 **Monitoring, Recording, and Solicitations.** If any Event of Default occurs, Fundo may proceed to protect and enforce its rights including, but not limited to, the following:

a) **Authorization To Contact Seller By Phone.** Seller authorizes Fundo, its affiliates, agents and independent contractors to contact Seller at any telephone number Seller provides to Fundo or from which Seller places a call to Fundo, or any telephone number where Fundo believes it may reach Seller or any owner, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller incurs charges for receiving such communications.

b) **Authorization To Contact Seller By Other Means.** Seller also agree that Fundo, its affiliates, agents, and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, electronic transmissions such as e-mail and facsimile, to contact Seller. Seller expressly consent to conduct business by electronic means.

c) **Rights To Opt Out Or Make Changes.** Seller are not required to agree to Sections 4.11(a) or 4.11(b) in order to enter into this Agreement. If Seller wishes to opt out of Section 4.11(a) and/or 4.11(b), or if Seller wants to change how Fundo contacts them, including with respect to any telephone number that Fundo might use, please call Fundo at 1(866)393-8636.

4.12 **Servicer.** Fundo may, from time to time, engage one or more servicers (collectively, the "Servicer"), to manage the administration, accounting, transfers, processing, and other day to day activities related to this Agreement, and the transactions contemplated herein. The Seller hereby covenants and agrees to comply with instruction which may be granted by the Servicer from time to time, and may rely upon information which may have been provided by the Servicer with the Fundo's authorization.

**4.13 Singular & Plural.** All references in this agreement to the singular shall include the plural where applicable and all references to gender shall include both genders and the neuter. The term "including" shall not be deemed to be exclusive.

## V. JURY TRIAL WAIVER.

THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

## VI. CLASS ACTION WAIVER.

FUNDO AND SELLER ACKNOWLEDGE AND AGREE THAT THE AMOUNT AT ISSUE IN THIS TRANSACTION AND ANY DISPUTES THAT ARISE BETWEEN THEM ARE LARGE ENOUGH TO JUSTIFY DISPUTE RESOLUTION ON AN INDIVIDUAL BASIS. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS ACTION LAWSUIT WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS ACTION LAWSUIT OR REPRESENTATIVE ACTION.

## VII. ARBITRATION.

At the request of either Party ("Requesting Party"), the other party agree to arbitrate all disputes and claims arising out of or relating to this Agreement. If a party seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate. If the parties do not reach an agreement to resolve the claim within 30 days after the Notice is received, either party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Fundo will promptly reimburse Seller any arbitration filing fee. Except as provided in the next sentence, Fundo will pay all administration and arbitrator fees. If the arbitrator finds that either the substance of the Claim raised by Seller or the relief sought by Seller is improper or not warranted, as measured by the standards set forth in Federal Rules of Procedure 11(b), then Fundo will pay these fees only if required by the AAA Rules. If the arbitrator grants relief to the Seller that is equal to or greater than the value of what the Seller or the Guarantor(s) requested in the arbitration, Fundo shall reimburse Seller for that person's reasonable attorneys' fees and expenses incurred for the arbitration. Seller agrees that, by entering into this Agreement, they are waiving the right to trial by jury. EACH PARTY MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings for more than one person's claims and may not otherwise preside over any form of a representative or class proceeding and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. SELLER MAY OPT OUT OF THIS CLAUSE. To opt out of this Arbitration Clause, Seller may send Fundo a notice that the Seller or Guarantor does not want this clause to apply to this Agreement. For any opt-out to be effective, Seller must send an opt-out notice to the following address 3323 NE 163rd Street Suite 509, North Miami Beach, FL 33160 by registered mail, within 14 days after the date of this Agreement:

Customer Service Department
Fundo 3323 NE 163rd Street, Suite 509
North Miami Beach, FL 33160

| | |
|---|---|
| Seller/Merchant | Kristy Wright |
| Signature | Kristy Wright |
| Date | 5/24/2021 |
| IP Address | [redacted] |

Fundo

**FEE SCHEDULE**

| | | |
|---|---|---|
| Processing fee*: | This fee is paid by the Merchant to Fundo, LLC to cover the costs of underwriting. These fees include the costs to review, process and decision the application. (THIS FEE WILL BE DEDUCTED FROM YOUR DISBURSED AMOUNT.) | $100.00 |
| Wire Funding Fee/Same Day ACH*: | For same day wire or ACH transfer | $25 |
| *The Fees mentioned above this line will be deducted from the proceeds of your advance | | |
| Bank Change Fee | For each of account requested. Can only change to another commercially used Bank Account. | $75 |
| NSF Fee | This is the Fee for a returned/reversed payment. After two consecutive NSF's, Agreement shall be in Default. | $50 |
| Ach Block Fee: | If Seller places an ACH block on their Account preventing Buyer from processing payment to the Account. This shall place the Agreement in Default. | $1000 |
| Default Fee: | If the Seller does anything that breaches the Purchase & Sale Agreement which precludes Buyer from collecting its Purchased Amount. | $1500 |
| Stacking Fee | If the Seller sells any additional receipts without the prior written consent of Fundo. | $1000 |
| UCC Filing Fee: | This is a cost to file a UCC lien. This fee will only be applicable if a UCC lien is filed. | $250 |
| Debit Card Payment Fee | Convenience fee added to any payment processed via debit card | $5 or 3%, whichever is greater |
| Monitoring Fee: | This is the fee for monitoring your selected bank account to try and avoid insufficient funds prior to initiating your payment. | $5 per week |

| | |
|---|---|
| Seller/Merchant: | Kristy Wright |
| Signature: | Kristy Wright |
| Date: | 6/24/2021 |
| IP Address: | [redacted] |

---

Fundo

**PAYMENT AUTHORIZATION AGREEMENT**

This Payment Authorization Agreement is part of the Purchase and Sale Agreement, dated as of 6/24/2021.

| | |
|---|---|
| Buyer: | Fundo, LLC |
| Seller/Merchant: | Kristy Wright |
| Bank Name: | [redacted] |
| Bank Routing: | [redacted] |
| Bank Account No. | [redacted] |

**NACHA RULES.** The Rules and Operating Guidelines of NACHA – The Electronic Payments Association Capitalized terms used in this Payment Authorization Agreement without definition shall have the meanings set forth in the Purchase and Sale Agreement attached hereto.

This Agreement for Direct Deposits ("Payment Credits") and Direct Collections ("Payment Debits") is part of (and incorporated by reference into) the Purchase and Sale Agreement and Terms and Conditions. Seller should keep a copy of this important legal document for the Seller's records.

**DISBURSEMENT OF PURCHASE PRICE.** By signing below, the Seller authorizes Buyer, after electing to purchase the Purchased Amount, to disburse the Purchase Price (less any applicable fees) set forth in this Agreement, or to disburse other amounts due to Seller under the this Agreement, by initiating an ACH payment credit or a Wire Transfer to the Seller's Designated Bank Account or other method requested by the Seller.

**COLLECTION OF FUNDS ARISING FROM FUTURE RECEIPTS.** By signing below, Seller authorizes Buyer and/or Servicer to collect any amounts Buyer is entitled to receive under this Agreement by initiating payment debits to the Seller's Account, as follows:

For the amount of $75.00 (or) Percentage of each banking deposit: 25%*

*The amount/percentage stated may also include the any other fees.

On the following Days: Each Designated business day. On the business day immediately following any business day(s) on which Seller's bank was not open or was not able to process ACH transactions, the Buyer will debit the Designated Bank Account for an amount equal to the sum of (i) the Payment amount scheduled on that business day, plus (ii) Payment amount(s) scheduled on the preceding business day(s) when the Bank was not open or could not process ACH transactions.

Changes to scheduled payments: All changes, or modifications to regularly scheduled payments must be submitted to the Fundo office, via email to support@fundo.com, no later than 6pm EST at least 2 (two) business days prior to the designated business day of the scheduled Payment withdrawal.

Payment Authorizations to Collect Debt upon missed payment: You authorize us to withdraw from your bank account up to and including the amount you owe Fundo according to this or any former Agreement. Fundo may make this withdrawal by re-presenting your check electronically, and/or by using one or more in varied amounts paper or EFT debits (collectively, "RCC") not to exceed the amount owed to us. Your EFT debit authorization extends to the bank account listed on your original Agreement or any other bank account maintained by you wherever located. If you provide us with a Visa or MasterCard debit card (collectively the "Debit Card") you also authorize us, denoted by your signature on this Agreement, to Charge, submit and collect all amounts due to us. We may submit these charges to your Debit Card or by RCC to your Account one or more times until the total amount owed to us is paid in full.

**MISCELLANEOUS:** If any Payment transaction date falls on a weekend or holiday, Seller understands and agrees that the transaction may be executed on the next business day. If a Payment transaction is rejected by Seller's financial institution for any reason other than termination of this authorization, including without limitation insufficient funds, Seller understands that Buyer may, at its discretion, attempt to process the Payment transaction again and if by ACH, as permitted under the NACHA Rules. Seller also authorizes Buyer to initiate ACH entries to correct any erroneous payment transaction(s) that may occur. Seller understands that Seller is responsible for ensuring that funds arising from Future Receipts remain in the Seller's Designated Bank Account each day until Buyer debits the amount that the Purchase and Sale Agreement authorizes Buyer to debit from the Seller's Designated Bank Account for that day. By signing below, Seller attests that the Account was established for business purposes and not primarily for personal, family or household purposes.

Buyer is not responsible for any overdrafts, rejected transactions, or fees that may result from credit or debit transactions initiated under this Agreement. The origination of ACH transactions to the Seller's Designated Bank Account must comply with, and both Buyer and Seller agree to be bound by, the provisions of applicable law and if Seller's Payment is by ACH, the NACHA Rules.

Seller authorizes Buyer to contact Seller's financial institution to obtain available funds information and/or to verify any information Seller has provided about the Seller's Designated Bank Account and to correct any missing, erroneous or out-of-date information. Seller understands and agrees that any revocation or attempted revocation of this Authorization will constitute an event of default under this Agreement. In the event that Seller closes the Designated Bank Account provided to Fundo for the payment transactions to be remitted from, or the Seller's Designated Bank Account has insufficient funds for any Payment Transactions under this Authorization, Seller authorizes Buyer to contact Seller's financial institution and obtain information (including account number, routing

number and available balance) concerning any other deposit account(s) maintained by Seller with Seller's financial institution, and to initiate Payment Transactions under this Authorization to such additional account(s). To the extent necessary, Seller grants Buyer a limited Power of Attorney to act in Seller's name to facilitate this authorization.

This authorization is to remain in full force and effect until Buyer has received written notification from Seller at 3323 NE 163rd Street Suite 509, North Miami Beach, FL 33160 at least 5 (five) banking days prior to its termination to afford the Buyer a reasonable opportunity to take action.

The Seller certifies that he/she is an authorized signer on the Designated Bank Account. Seller will not dispute any Payment transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Payment Authorization Agreement. Seller requests the financial institution that holds the Seller's Designated Bank Account to honor all ACH, RCC, and Debit Card credits and debits initiated in accordance with this Authorization Agreement.

| | |
|---|---|
| Seller/Merchant: | Kristy Wright |
| Signature: | Kristy Wright |
| Date: | 6/24/2021 |
| IP Address: | [redacted] |

# EXHIBIT C-2

## Michigan Department of State UCC Portal Screenshot Showing "Active | UCC Lien" (Certified February 2, 2026)

**Michigan Department of State**
Customer Portal

SOS home | MI.gov | FAQs | Contact us

Dashboard
UCC search
New UCC...
My filings
Messages
Orders
Payments
Account
Help

# Dashboard

Hi Wrightk2233, what would you like to do next?

## File a UCC form

Please click the button below to see the list of UCC forms.

File UCC

UCC-1 initial financing statement

## Update a financing statement

Search for a financing statement number

*Search for a financing statement number*

20210629000843-3

Active | UCC Lien

## News and announcements

### Certified Date

02/02/2026 12:00:00 AM

### Online filing required

As of 5/1/2025 All filings/transactions must be completed using UCC online Customer Portal.

# EXHIBIT D

## Email Correspondence Showing Notice of Bankruptcy, Discharge, and Refusal to Release Lien (September 22 & December 9, 2025)

Gmail

**Kristy Wright <kristywright84@gmail.com>**

## Notice of Chapter 7 No Asset Bankruptcy

7 messages

**Kristy Wright** <kristywright84@gmail.com> Mon, Sep 22, 2025 at 11:57 AM
To: "legal@lupoloverlaw.com" <legal@lupoloverlaw.com>

Hello,
I have received a notice that you have put a lien on my Amazon account due to a past due account with Fundo. I have attached a statement that I have filed for Chapter 7 No Asset Bankruptcy, including the filing date and case number. The creditor must cease all attempts to collect this debt or to pursue further legal action.

Thank You,
Kristy Wright
269-598-2984

**FUNDO NOTICE OF BANKRUPTCY.docx**
23K

**Legal Collection** <legal@lupoloverlaw.com> Mon, Sep 22, 2025 at 12:18 PM
To: Kristy Wright <kristywright84@gmail.com>

Dear Ms. Wright,

Thank you for your email and notifying us of your Chapter 7 Bankruptcy filing as proper notification has not been received from the courts. A copy of the UCC Filing Acknowledgement and electronically signed and redacted Payment Rights Purchase and Sale Agreement is attached for you and your attorney's review.

Regards,

Legal Department

[Quoted text hidden]

**Kristy Wright - 006981751 - UCC Filing Ack and Redacted Agreement.pdf**
5442K

**Kristy Wright** <kristywright84@gmail.com> Mon, Sep 22, 2025 at 12:23 PM
To: Legal Collection <legal@lupoloverlaw.com>

Thank you.
So will the liens be lifted? I am requesting verification from you that the liens will be lifted. This is very important.

Thank You,
Kristy Wright
[Quoted text hidden]

**Legal Collection** <legal@lupoloverlaw.com> Mon, Sep 22, 2025 at 12:29 PM
To: Kristy Wright <kristywright84@gmail.com>

Dear Ms. Wright,

The UCC lien was filed with the Secretary of State on June 29, 2021, which predates the bankruptcy filing date of July 14, 2025. We would be pleased to comply with an order from the judge, issued after an adversary hearing, that requires Fundo to release the lien.

Regards,

Legal Collection
[Quoted text hidden]

---

**Kristy Wright** <kristywright84@gmail.com> Tue, Dec 9, 2025 at 3:19 PM
To: Legal Collection <legal@lupoloverlaw.com>

Legal Collection,

I have attached a copy of my discharge paperwork from my Chapter 7 No Asset Bankruptcy.
As this has now been discharged, can you confirm for me that the liens you have placed will now be lifted?

Thank You,
Kristy Wright
[Quoted text hidden]

---

**Kristy Wright** <kristywright84@gmail.com> Tue, Dec 9, 2025 at 3:21 PM
To: Legal Collection <legal@lupoloverlaw.com>

Attachment included
(Left off of last email)

Kristy Wright
[Quoted text hidden]

**BNC00005.PDF**
65K

---

**Legal Collection** <legal@lupoloverlaw.com> Tue, Dec 9, 2025 at 5:36 PM
To: Kristy Wright <kristywright84@gmail.com>

Dear Ms. Wright:

We acknowledge receipt of your recent correspondence. Please be advised that the Chapter 7 Bankruptcy petition was filed on July 14, 2025. The Uniform Commercial Code (UCC) lien was duly perfected and recorded with the appropriate Secretary of State on July 29, 2021, predating the bankruptcy petition. Should your counsel commence an adversary proceeding and the Court issue an order directing release of the lien, kindly provide our office with a certified copy of said order. Upon receipt, we will comply with the Court's directive forthwith.

Additionally, according to the schedules filed with the Bankruptcy Court, CashApp and Venmo were each listed with balances of $0.01. As these balances fall below the statutory threshold of $600.00, it is our position that they are governed by the provisions of the Bankruptcy Code relating to pre-petition garnishment recovery for amounts under $600.00. Should our interpretation be inaccurate, we respectfully request that your bankruptcy counsel be copied on this correspondence and that you contact our office directly so that the matter may be addressed in accordance with applicable law.

This letter is provided without waiver of any rights, claims, or defenses available to our client, all of which are expressly reserved.

Respectfully,

Legal Department

Law Offices of Michael Lupolover, PC

[Quoted text hidden]

**Kristy Wright - 006981751 - UCC Filing ACK & Redacted Agreement.pdf**
5442K